IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-00225-KDB-DCK

| | | |
|---|---|---|
| Joey Sigmon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| State Farm Mutual Automobile Company, | ) | |
| State Farm Mutual Automobile Insurance | ) | |
| Company, and State Farm Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the parties' cross Motions for Summary Judgment (Doc. Nos. 34, 37). The Court has carefully reviewed the motions and considered the parties' briefs and exhibits.[1] As discussed below, the Court will **DENY** both parties' motions for summary judgment because there are numerous genuine issues of material facts disputed among the parties on their various claims. The trial of this action will accordingly remain set for November 18, 2019.

### I. LEGAL STANDARD

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] The Court did not hold oral argument on the motions because it was not necessary and would not have assisted the decisional process in the circumstances of this dispute.

1

R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility

determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II. DISCUSSION

When parties to an action file cross motions for summary judgment that often indicates that the parties agree on the material facts and believe that the resolution of a controlling question of law will decide the case for one side or the other. Not so in this case, where the parties' cross summary judgment motions more closely resemble ships passing in the night on a sea of disputed facts and legal theories.

This action arises out of a car accident in Hickory, North Carolina on May 20, 2016 between Plaintiff Joey Sigmon ("Sigmon") and Ally Hennington, who is one of Defendants' (collectively "State Farm") insureds. Sigmon was injured in the collision, suffering a broken right shoulder, which has led to two surgical procedures. Sigmon's vehicle was declared a total loss.

Sigmon contends, in an allegation supported by the police report of the accident, that he had the right of way and Defendant pulled out in front of him. Soon after the accident, Sigmon filed a claim with State Farm. On or about May 31, 2016, State Farm accepted "100% liability" and/or told Sigmon that it was taking "full responsibility" for the accident, although the details and scope of State Farm's acceptance of liability is disputed. Sigmon asserts that in reliance on this acceptance of liability, he did not engage counsel, investigate the accident or take any other action to pursue his claims against State Farm's insured.

In June 2016, State Farm paid Sigmon for the property damage to his vehicle and reimbursed him for rental car expenses. Also, State Farm sought medical information from Sigmon, and the parties began discussions concerning how much Sigmon would be paid for his bodily injuries, but they did not reach an agreement on the amount. From the time when State Farm accepted "responsibility" for the accident on behalf of its insured in late May 2016 until late June 2017, State Farm did not indicate that its acceptance of responsibility was in any manner contingent, uncertain or subject to further investigation or potential modification. However, at some point the agents and/or adjusters responsible for handling the claim at State Farm changed, and on or about June 26, 2017 State Farm changed its position, denying liability and responsibility for Sigmon's claim on the grounds that Sigmon was allegedly contributorily negligent and bore partial responsibility for the accident.

Following State Farm's denial of responsibility, Sigmon filed personal injury claims against Hennington in the Superior Court of Catawba County, in a case captioned, *Joey W. Sigmon and Mary Sigmon v. Ally R. Hennington and Mark H. Hennington*, Case No. 17 CVS 2838, and filed this action, which was removed to this Court on December 21, 2017. The parties have each moved for summary judgment on all of Sigmon's remaining claims – breach of contract, negligent misrepresentation and fraud in the inducement.

The parties' most fundamental disagreement is over the scope, nature and effect of State Farm's acceptance of responsibility for its insured's liability for Sigmon's injuries and damages as a result of the car accident. Sigmon characterizes State Farm's conduct as a binding acceptance of responsibility on which he relied and which the company is estopped from disavowing (particularly over a year later). State Farm in turn asks the Court to find that its acceptance of responsibility was no more than a part of incomplete negotiations towards a

settlement, and it is free to change its position so long as Sigmon cannot prove that he has been "harmed" by the change. Within this overall disagreement are more specific disagreements over facts related to whether consideration exists for State Farm's promises and the existence and amount of Sigmon's damages that may be recovered.[2]

While these factual disputes make the award of summary judgment for either party inappropriate, the Court will address the parties' positions over the application of the doctrine of equitable estoppel so the parties will more fully understand the nature of the dispute that will be presented to the jury.

In *Whitacre Partnership v. Biosignia, Inc.*, et al., 358 N.C. 1, 13 (2004), the North Carolina Supreme Court summarized North Carolina law on estoppel generally and the several different types of estoppel, including equitable estoppel, judicial estoppel and quasi-estoppel:

> Broadly speaking, "estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth." 28 Am. Jur.2d *Estoppel and Waiver* § 1 (2000). As we noted over 150 years ago, it is a principle which "lies at the foundation of all fair dealing between [persons], and without which, it would be impossible to administer law as a system." *Armfield v. Moore,* 44 N.C. 157, 161

---

[2] State Farm contends that Sigmon has no right to seek payment for his bodily injuries from State Farm prior to a judgment against Hennington, its insured. However, if State Farm made a promise to Sigmon to pay his damages arising from the accident on behalf of its insured and is equitably estopped from changing its position then Sigmon can recover those bodily injury damages in this action (in the amount found by a jury). Although Sigmon cannot recover the same damages twice, that does not mean that he cannot pursue similar damages against two different parties on different legal theories (negligence against Hennington / breach of contract, etc. against State Farm) until he is made whole for all his proven damages.

(1852). "Estoppel" is not a single coherent doctrine, but a complex body of interrelated rules, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel. 28 Am. Jur.2d *Estoppel and Waiver* § 2 (2000).

….

North Carolina courts have also long recognized the doctrine of equitable estoppel, otherwise known as estoppel in pais. *In re Will of Covington*, 252 N.C. 546, 548, 114 S.E.2d 257, 259 (1960) (discussing the common law origins of equitable estoppel and summarizing the "multitude of cases" where the doctrine has been applied in this state). Generally speaking, the doctrine applies:

"when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

*State Highway Comm'n. v. Thornton*, 271 N.C. 227, 240, 156 S.E.2d 248, 258 (1967) (quoting *Boddie v. Bond*, 154 N.C. 359, 365, 70 S.E. 824, 826 (1911)). In such a situation, the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party. *Id*. In applying the doctrine, a court must consider the conduct of both parties to determine whether each has "conformed to strict standards of equity with regard to the matter at issue." *Creech v. Melnik*, 347 N.C. 520, 529, 495 S.E.2d 907, 913 (1998).

Equitable estoppel is closely related to judicial estoppel. … In some jurisdictions, the close connection between the doctrines has led to substantial confusion. *See, e.g.*, *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir.1992) (noting that judicial estoppel "is frequently expressed in language sounding of estoppel in pais" but "operates independently of equitable estoppel" (quoting 1B Moore, Federal Practice, § 0.405[8], at 765–768 (2d ed. 1971)). Most authorities, however, have consistently distinguished the doctrines on the following grounds. … [E]quitable estoppel is designed to promote fairness between the parties, whereas judicial estoppel seeks primarily to protect the integrity of judicial proceedings. (citations omitted). …

This Court has also recognized that branch of equitable estoppel known as "quasi-estoppel" or "estoppel by benefit." *Brooks v. Hackney*, 329 N.C. 166, 172 n. 3, 173, 404 S.E.2d 854, 858 n. 3, 859 (1991); *see also Shuford v. Asheville Oil Co.*, 243 N.C. 636, 646–47, 91 S.E.2d 903, 911 (1956); *Allen v. Allen*, 213 N.C. 264, 271, 195 S.E. 801, 805 (1938). Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument. *Brooks*, 329 N.C. at 173, 404 S.E.2d at 859; *see also Pure Oil Co. v. Baars*, 224 N.C. 612, 615, 31 S.E.2d 854, 856 (1944); 11A Strong's North Carolina Index 4th Estoppel § 13 (2001). The key distinction between quasi-estoppel

and equitable estoppel is that the former may operate without detrimental reliance on the part of the party invoking the estoppel. *See Chance v. Henderson*, 134 N.C.App. 657, 665, 518 S.E.2d 780, 785 (1999); 11A Strong's North Carolina Index 4th Estoppel § 13 (2001); cf. Restatement (Second) of Conflict of Laws § 74 cmt. b (1971) (stating that under a "true" estoppel, "one party induces another to rely to his damage upon certain representations"). In comparison to equitable estoppel, quasi-estoppel is inherently flexible and cannot be reduced to any rigid formulation. *See Taylor v. Taylor*, 321 N.C. 244, 249 n. 1, 362 S.E.2d 542, 546 n. 1 (1987).

Despite this close connection, however, there are substantial differences between the doctrines, with quasi-estoppel appearing to occupy an intermediary position between judicial estoppel and equitable estoppel. *See Anderson & Holober*, 4 Conn. Ins. L.J. at 666–69 (comparing judicial estoppel, equitable estoppel, and quasi-estoppel). As our Court of Appeals has noted, "the essential purpose of quasi-estoppel ... is to prevent a party from benefitting by taking two clearly inconsistent positions." *B & F Slosman v. Sonopress, Inc.,* 148 N.C.App. 81, 88, 557 S.E.2d 176, 181 (2001), *disc. rev. denied,* 355 N.C. 283, 560 S.E.2d 795 (2002).

First, contrary to State Farm's argument, it appears that equitable estoppel and quasi-estoppel may apply in this action, with the scope and application of the estoppel doctrines

depending on the factual findings of the jury. State Farm argues that "the doctrine of equitable estoppel is misplaced and inapposite" because "North Carolina '[c]ourts have continuously recognized that a party may not assert a particular position in an action, and then assert a contrary position in subsequent proceedings after having accepted the benefits." However, State Farm's argument confuses the doctrines of judicial estoppel (related to representations in legal proceedings) and equitable estoppel and quasi-estoppel (which apply to representations outside of legal proceedings). Regardless of whether State Farm made any representations or maintained any positions in legal actions or proceedings inconsistent to those in the instant litigation, it may still be equitably estopped or quasi-estopped from changing its position on its insured's legal responsibility to Sigmon if the elements of either of those doctrines are met. Thus, the Court disagrees with State Farm that equitable estoppel or quasi-estoppel do not apply as a matter of law.

"The essential elements of equitable estoppel are: '(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts.' " *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C.App. 478, 764 S.E.2d 203, 216 (2014) (quoting *White v. Consol. Planning, Inc.*, 166 N.C.App. 283, 603 S.E.2d 147, 162 (2004)). The party asserting the defense must: (1) lack knowledge and the means of acquiring such knowledge about the real facts in question; and (2) have "relied upon the conduct of the party sought to be estopped to his prejudice." *Id.* (quoting *White*, 603 S.E.2d at 162) . "Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel." *Duke Univ. v. Stainback*, 320 N.C. 337, 357 S.E.2d 690, 692 (1987). It is the party asserting equitable estoppel who bears

9

the burden of proving the essential elements. *State Farm Mut. Auto. Ins. Co. v. Atl. Indem. Co.*, 122 N.C.App. 67, 468 S.E.2d 570, 575 (1996)

Sigmon has, at a minimum, raised factual issues with respect to all of the elements of equitable estoppel. Further, with respect to quasi-estoppel, State Farm has arguably entered into a transaction (the acceptance of full responsibility for its insured's liability) and accepted benefits (negotiating with Sigmon without counsel, settlement of property claims, avoiding the immediate expense of further investigation and counsel related to a lawsuit, etc.) such that it may be estopped to take a later position denying liability. If Sigmon proves the existence of the transaction and State Farm's acceptance of benefits, then Sigmon need not show the "detrimental reliance" on which the parties disagree with respect to equitable estoppel. As noted above, "in comparison to equitable estoppel, quasi-estoppel is inherently flexible and cannot be reduced to any rigid formulation." *See Taylor v. Taylor*, 321 N.C. 244, 249 n. 1, 362 S.E.2d 542, 546 n. 1 (1987). Therefore, resolving a potential claim for quasi-estoppel seems particularly inappropriate for resolution on summary judgment.

State Farm argues that "the law of equitable estoppel does not prevent State Farm from subsequently denying Plaintiff's bodily injury claim upon further investigation and inquiry even though it initially accepted liability for that claim," threatening that "allowing Plaintiff's claim would result in new law preventing insurers from changing their liability determinations at any point during the investigation." This is incorrect. Applying the long-settled law of equitable estoppel and quasi-estoppel to the specific facts of this case will not prevent State Farm and other insurers from conducting investigations and reserving liability determinations for however long they might choose to do so. Nor do these estoppel doctrines prevent insurers from expressly making initial liability decisions subject to change based on further investigation. Instead, the

potential application of equitable estoppel and quasi-estoppel would simply not allow insurers to tell accident victims – without reservation – that the insurer was accepting "full responsibility" for the accident on behalf of its insured, induce inaction from the injured party and then later change its position to deny responsibility.[3]

Further, State Farm is also incorrect in arguing that applying equitable estoppel or quasi-estoppel means that "any acceptance of any liability of any part of any claim constitutes acceptance of all liability of all claims that may be asserted." The scope of the estoppel is limited to only the liability for which the insurer accepted responsibility, which will be determined by the jury. If the jury finds that State Farm accepted responsibility on behalf of its insured for liability (subject to its insurance policy limits) for all lawful damages arising from the accident (including bodily injury) then that is the scope of the estoppel. If the jury finds that the acceptance of responsibility was more limited, then a more limited scope will apply.

Accordingly, there are a number of factual disputes which the jury will need to resolve to determine the resolution of Sigmon's claims, State Farm's defenses and the proper scope and application of the doctrines of equitable estoppel and quasi-estoppel in this action.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Plaintiff and Defendants Motions for Summary Judgment (Doc. Nos. 34, 37) are hereby **DENIED**. The Parties are advised that the case will remain scheduled on the Court's November 18, 2019 trial term, and that their obligations in advance of trial, including but not limited to the

---

[3] Of course, these estoppel doctrines might not be applicable if the insurer changes its position based on improper conduct by the party seeking the estoppel. However, there is no allegation that State Farm changed its position in June 2017 based on anything said or done by Sigmon at the time State Farm made its decision to accept responsibility in June 2016.

obligation to hold a settlement conference at least 3 full weeks before the trial date, can be found in the undersigned's standard pretrial order, which is available on the Court's website.

      **SO ORDERED ADJUDGED AND DECREED**.

Signed: August 19, 2019

Kenneth D. Bell
United States District Judge